2008 BNH 011
_____

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:

Pittsfield Weaving Company,                                     Bk. No. 06-11214-MWV
                      Debtor                                                              Chapter 11

*William Gannon, Esq.*
WILLIAM S. GANNON PLLC
*Attorney for Debtor*

*Geraldine Karonis, Esq.*
OFFICE OF THE UNITED STATES TRUSTEE
*Attorney for United States Trustee*

## MEMORANDUM OPINION

      Before the Court is the United States Trustee's motion to dismiss or convert the instant case to a case under chapter 7 pursuant to 11 U.S.C. § 1112(b) (the "Motion").[1] The Internal Revenue Service and CapitalSource Finance LLC (hereinafter "CapitalSource") join the United States Trustee in the Motion. Pittsfield Weaving Company (the "Debtor"), the Official Committee of Unsecured Creditors (the "Committee"), and majority equity holders, Gilbert and Susan Bleckmann, oppose the Motion. On July 16 and July 21, 2008, the Court held a hearing on the matter and took it under advisement.

### JURISDICTION

      This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

---

[1] Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§" refer to Title 11 of the United States Code, 11 U.S.C. § 101 et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8.

**BACKGROUND**

On September 20, 2006, the Debtor filed a voluntary chapter 11 petition.  The Debtor employs over eighty people in the town of Pittsfield and manufactures labels that are sold to clothing retailers.  It offers its services globally and is operated by the Bleckmann family.  The Debtor's traditional business is producing brand labels that are sewn on apparel.  During its bankruptcy case, the Debtor expanded its business to include the production of technology products, namely, anti-theft security labels (hereinafter, "technology business").  The Debtor and Checkpoint, a customer, jointly developed the technology products.

The United States Trustee filed the Motion on May 1, 2008, and the Court held a series of hearings on the matter and other related motions in July 2008 (the "July hearings").  As of the July hearings, the technology business was relatively new, and the Debtor needed financing and new inventory to implement it.  At that time, the Debtor had received two Checkpoint purchase orders for 34 million anti-theft labels and was negotiating a global agreement with Checkpoint for the exclusive right to manufacture all Checkpoint anti-theft labels for three years.  Also as of the July hearings, the Debtor had incurred over $900,000 in post-petition debt.  Of that amount, over $180,000 represented unpaid post-petition taxes.  The cause for the post-petition debt was largely due to two critical events that occurred at the end of 2007.  Specifically, the Debtor lost an important customer, West Point Homes, and experienced significant delays in its traditional business with Checkpoint.  On July 1, 2008, the Debtor filed its third amended disclosure statement and third amended plan.

**DISCUSSION**

The issue before the Court is whether there is "cause" under 11 U.S.C. § 1112(b) to convert or dismiss the Debtor's case, and if so, whether there are unusual circumstances that establish that conversion or dismissal is not in the best interests of creditors and the estate.  The United States Trustee initially alleged four causes for conversion or dismissal under section 1112(b).  Two of those causes are moot because the Debtor filed its amended disclosure statement and plan and paid its quarterly fees to the

United States Trustee. See 11 U.S.C. § 1112(b)(4)(J) and (K). Nonetheless, the United States Trustee maintains that there is cause based on the Debtor's failure to pay post-petition taxes and because there is substantial or continuing loss to the estate with no reasonable likelihood of rehabilitation. See id. § 1112(b)(4)(I) and (A).

"Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause." Id. § 1112(b)(1); see In re AmeriCERT, Inc., 360 B.R. 398, 401 (Bankr. D.N.H. 2007) ("Prior to its amendment, the statute provided that a court 'may' dismiss the case upon finding cause, but amended section 1112(b) provides that a court 'shall' dismiss if cause is found, absent unusual circumstances.").

### A. Cause Exists to Convert or Dismiss the Case

Section 1112(b)(4) provides a non-exhaustive list of "causes" for conversion or dismissal. See In re AmeriCERT, Inc., 360 B.R. at 401; In re 3 Ram, Inc., 343 B.R. 113, 117 (Bankr. E.D. Pa. 2006) ("While the enumerated examples of 'cause' to convert or dismiss a chapter 11 case now listed in § 1112(b)(4) have changed under BAPCPA, the fact that they are illustrative, not exhaustive has not."). A debtor's failure to timely "pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief" is cause for conversion or dismissal. 11 U.S.C. § 1112(b)(4)(I). The movant has the burden of establishing cause under section 1112(b). Id. § 1112(b)(1).

The Court first notes that it is mindful of and concerned about the grave impact a conversion or dismissal will have on the Debtor's employees and the town of Pittsfield. However, it is undisputed that the Debtor owes over $180,000 in unpaid post-petition taxes. Moreover, the Debtor has been late in filing

3

its monthly operating reports. As of the July hearings, the Debtor was behind two months in its reports. In addition, the Debtor failed to pay its monthly health insurance premiums, which ultimately resulted in the policy's termination; as of the July hearings, the Debtor was in arrears since March 2008. Further, despite being in bankruptcy for nearly two years, the Debtor has not shown a confirmable plan. The Debtor filed its first plan after obtaining an extension of the exclusivity period. It then filed a second amended plan that was denied, and the Debtor recently filed its third amended plan after the United States Trustee filed the Motion. The unfortunate reality of this case is that significant administrative debt continues to increase and there is no consensual plan of reorganization. The Court has no doubt that the Bleckmanns have worked hard to preserve the Debtor, but there has been no infusion of new capital and the Debtor does not have sufficient capital to stay in business. Given such facts, the Court finds that there is cause to convert or dismiss the case.

   B.  <u>**No Contravening Unusual Circumstances**</u>

If there is cause, "absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter[.]" 11 U.S.C. § 1112(b)(1). Section 1112(b) does not define "unusual circumstances," but the phrase contemplates conditions that are not common in chapter 11 cases. <u>In re Fisher</u>, No. 07-61338-11, 2008 WL 1775123, at *5 (Bankr. D. Mont. Apr. 15, 2008). Courts have much discretion in determining whether there are unusual circumstances that weigh against conversion or dismissal. <u>See</u> <u>In re The 1031 Tax Group, LLC</u>, 374 B.R. 78, 93 (Bankr. S.D.N.Y. 2007) (stating that "[t]he statute explicitly provides for this discretion where a court is able to identify 'unusual circumstances . . . that establish that the requested conversion is not or dismissal is not in the best interests of creditors and the estate'") (citation omitted). When applicable, courts must specify such unusual circumstances. § 1112(b)(1).

The Court believes that there are unusual circumstances in this case that suggest that conversion or dismissal may not be in the creditors' best interests. First, the Debtor's post-petition debt accrued largely due to two unexpected, critical events in late 2007, the loss of the West Point Homes business and the delay in Checkpoint business. Second, trade creditors have assumed the risk and continue to deal with the Debtor despite accruing post-petition debt. Lastly, the Debtor may enter into a three-year global agreement with Checkpoint, which could help its reorganization efforts and cure some of its post-petition debt. The Debtor and Checkpoint share a unique relationship due to their jointly developed technology product.

At this juncture, however, the Court finds the likelihood of the parties executing the global agreement doubtful. The Debtor did not produce documentation evidencing the global agreement, no Checkpoint representative appeared at the July hearings, and although Checkpoint placed a blanket order for 30 million labels, that order is not part of the global agreement. Moreover, the Debtor's ability to fulfill Checkpoint purchase orders under the global agreement depends on the success of at least two other agreements with third parties. Specifically, those agreements are the revolving purchase money loan with CES Designs of Burlington, NC, which is necessary to supply the print tape inventory, and the sale and funding agreement with Vested for Growth, Inc. (hereinafter, "VFG"), which is necessary to fund the entire Checkpoint program. The VFG agreement for one, changed three times up to the date of the July hearings. While the Debtor advocates that these relationships will cure its ills, they also increase the risk of additional administrative expenses.

As for its traditional business, the Debtor's comptroller, James Murray, testified that it is not profitable. The Debtor's vice president, Karen Bleckmann, testified that the traditional business will stay at its current state for the next year. Given the doubtful prospects of its technology business and its unprofitable traditional business, the Court is not convinced that creditors in this case are better served by the Debtor staying in chapter 11. The Debtor's post-petition debt exceeds $900,000. Its monthly

operating reports for January through April 2008 evidence continual increase in debt.[2] Accordingly, the Court believes that the risk of continuing post-petition losses outweigh the unusual circumstances in this case, and the Court finds that there are no countervailing unusual circumstances that establish that conversion or dismissal is not in the best interests of the creditors and estate.

    C.    **Section 1112(b)(2) Exception**

Nonetheless, when there is cause and no countervailing unusual circumstances against conversion or dismissal, a debtor may still defeat conversion or dismissal if the exception set forth in 11 U.S.C. § 1112(b)(2) applies. In re Sherwood, No. 04-50584, 2008 WL 2074098, at *2 (Bankr. W.D. Mo. May 14, 2008). Section 1112(b)(2) provides:

> The relief provided in paragraph (1) shall not be granted absent unusual circumstances specifically identified by the court that establish that such relief is not in the best interests of creditors and the estate, if the debtor or another party in interest objects and establishes that–
>> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
>>
>> (B) the grounds for granting such relief include an act or omission of the debtor other than under paragraph (4)(A)--
>>> (i) for which there exists a reasonable justification for the act or omission; and
>>>
>>> (ii) that will be cured within a reasonable period of time fixed by the court.

§ 1112(b)(2).

However, in the instant case, the Debtor did not make any showing of a reasonable likelihood of a confirmable plan. The Debtor filed the plan after the United States Trustee filed the Motion. Therefore, this exception does not apply. Furthermore, the Court need not examine the United States Trustee's

---

[2] In January 2008, the Debtor's current liabilities totaled $1,511,172, which increased to $1,913,343 by April 2008.

substantial or continuing loss argument raised pursuant to section 1112(b)(4)(A) because cause already exists and this exception is inapplicable.[3]

> D. **Conversion or Dismissal**

As there is cause, no contravening unusual circumstances, and no applicable exceptions, the Court must convert or dismiss the Debtor's case pursuant to section 1112(b). The test for determining one over the other is whether conversion or dismissal is in the best interests of creditors and the estate. 11 U.S.C. § 1112(b)(1).

The Court finds that dismissal of the case is in the best interest of the creditors and the estate. The Committee has objected to the conversion or dismissal of the case. Trade creditors may still want to continue dealing with the Debtor. The appointment of a chapter 7 trustee is not likely to benefit the creditors and the estate, as a trustee is likely incapable of running the Debtor's business where it appears that the Bleckmanns significantly influence the Debtor's business relationships, especially with regard to its technology aspects. Moreover, the appointment of a trustee will cost the estate additional administrative expenses. CapitalSource might prefer the structure of chapter 7 to enforce its rights as a secured creditor, but it has also joined in the motion to dismiss. Given these facts, the Court finds that the Debtor's case is not one appropriate for bankruptcy relief and will dismiss the case.

## CONCLUSION

This opinion constitutes the Court's findings and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order consistent with this opinion.

For the reasons set out herein, the Debtor's chapter 11 case and all pending adversary proceedings are dismissed, effective ten business days from the entry of the order, unless a consensual

---

[3] If the elements for this exception were present, like a confirmable plan, the Court would have to examine the United States Trustee's section 1112(b)(4)(A) cause argument to determine whether section 1112(b)(2) proscribes the Court from converting or dismissing the Debtor's case.

plan is filed prior thereto by all economic parties in interest, namely the Debtor, CapitalSource, Meredith Village Savings Bank, and the Committee.  The Court will issue a separate order in accordance with the ruling set out herein relative to the Debtor's motion for cash collateral.  For all other pending motions, the Court will make its rulings upon the expiration of the ten business days.

DATED this 15th day of August, 2008, at Manchester, New Hampshire.

/s/ Mark W. Vaughn
Mark W. Vaughn
Chief Judge